[Civ. No. 17782.   First Dist., Div. Two.   Apr. 1, 1958.]

OTTO J. WEBER et al., Respondents, v. MAUDE E. ROSS, Appellant.

Robert D. Carter for Appellant.

Wagener & Brailsford for Respondents.

BRAZIL, J. pro tem.*—The respondent is a real estate broker who was employed by appellant and one Goldenson to effect an exchange of properties. The appellant refused to complete the exchange after Mr. Goldenson had accepted her offer, whereupon the broker sued her for the commission he claimed became due upon the fulfillment of his obligations under the contract of exchange. From a judgment against her, the defendant, Mrs. Ross, has appealed.

Viewing the evidence in the light most favorable to the respondent and resolving conflicts therein in favor of the judgment, we find the following to be a substantial summary of what took place. In December 1954, Mrs. Ross, the appellant, signed an offer of exchange of her properties for a motel in Stockton belonging to Mr. Goldenson. The broker was given the exclusive right for five days to obtain its acceptance. Within the offer there is a provision that Mrs. Ross agrees to pay the broker $3,500 commission upon execution of the agreement by all parties. Mr. Goldenson, after inspecting the properties offered by Mrs. Ross, signed an acceptance thereof on December 4, 1954, without making any reservation or exception.

The written offer, following a recitation of the payment and obligation features of the proposed contract, under the heading "Terms and Conditions of Exchange" contains this

*Assigned by Chairman of Judicial Council.

clause: "Subject to inspection of books and properties of both parties." On the contract of exchange, as introduced in evidence, there appears opposite the expression last quoted the initials of Mrs. Ross and those of Mr. Goldenson. There is no question on appeal that, as to the latter, the condition was fulfilled and that his signed acceptance at the end of the contract was unconditional. ▉ The appellant contends that, as to her, the condition was not performed, that the inspection of books and properties was not complete, that further inspection was contemplated, and that her initialing of the condition was for a purpose other than as an indication that, as to her, the condition had been complied with.

Although the offer was dated December 3, 1954, Mrs. Ross actually signed the paper at her home about 9 o'clock p. m. of the day before. The respondent's salesman, Mr. Miller, who handled all the details for the broker, called at Mrs. Ross' home in San Mateo on that evening for the purpose of getting the written offer signed in order that he might thereafter present it to Mr. Goldenson. She was not feeling very well at the time, so only a tentative appointment was made by Mr. Miller to pick her up early the next morning to drive her to Stockton to inspect the books and the property. If Mrs. Ross were too ill to make the trip, she was to have phoned Mr. Miller, otherwise, the appointment was to be kept. Not having heard from her, the salesman called for her at 8 o'clock the next morning. In the meantime, Mr. Miller had submitted the written offer to Mr. Goldenson. The pair drove to Stockton, by way of Pleasanton, where by coincidence they met Mr. Goldenson, and he then called his motel manager and told him to arrange for the giving of such information about the motel as Mrs. Ross should want. On getting to Stockton, they went to the motel, met the manager, talked to him and his wife, stayed there about an hour and then proceeded back to San Mateo. While at the motel, there was a general conversation with the manager about business; Mrs. Ross and the wife looked at the yard proper, the back yard of the premises and the general living conditions. While in the office, the manager brought in what books he had, which covered only the last four months, and handed them to her. Apparently, she still wasn't feeling very well for she then said "Well, I don't want to take the time right now," but nevertheless she did glance at them. Much information, such as concerns taxes, monthly payments, wages and other items

of expense, that one reasonably would expect a prudent buyer would want to see on such a large transaction were not included in the books that were presented. However, neither Mr. Miller nor Mrs. Ross asked for such information, possibly because it was apparent such information was not at that time and place available. Mr. Miller, at her request, made rough notes mainly about monthly totals.

On the way home, Mrs. Ross wanted to locate a man who was supposed to be interested in her property, but they were unable to find him so they went to Mrs. Ross' home where there was further discussion about the deal. The trip, just referred to, was the second Mrs. Ross had made to the motel; and it also appears from the evidence that Mr. Goldenson had on a previous occasion refused an offer from her for the place. Mrs. Ross is not a person totally unfamiliar with real property transactions, having had limited experience in that field before.

About seven in the evening of the same day they made the Stockton trip, Mr. Miller and appellant at her home discussed the situation as it had developed up to that time. He testified she said everything appeared to be in good order so that he replied "If everything is in order, then we can go ahead with the deal." He then submitted the offer she had already signed for initialing. She put her initials opposite the clause which concerned itself with the right of inspection of books and properties of the parties. In this regard, she testified that Mr. Miller told her when she asked him if such initialing was binding on her that it was not; that the reason he wanted the initials placed on the offer was only to show his boss that he really had made a business trip to Stockton. Mr. Miller denied having made any such statement, testifying that he told her that the initialing meant that she had inspected the books and the property. This only results in a conflict of evidence, of no assistance to appellant for the trial court accepted Mr. Miller's version, not hers, of what took place; and in so doing was not unreasonable.

After leaving Mrs. Ross, the salesman hurried over to Danville to see Mr. Goldenson, and he did see him about 9 o'clock of the same evening. Mr. Goldenson, having during the day made an inspection of the properties he was to get in the exchange, signed the acceptance of the offer and put his initials upon the written offer right near where Mrs. Ross had placed hers.

If the condition as to both parties was then met, and no

fraud or mistake having been pleaded or proved, there was right then a binding contract of exchange between Mr. Goldenson and Mrs. Ross. In such an event, the real estate agent had performed his agreement and his commission was thereupon due. It would make no difference if the exchange was never thereafter consummated. (*Deeble* v. *Stearns*, 82 Cal.App.2d 296 [186 P.2d 173].) The commission would still be due even if thereafter one of the parties, as Mrs. Ross indicated was her desire, wanted or tried to back out of the agreement.

There can be no doubt that each of the parties to the exchange agreement had a right to inspection of the books and properties; that until this condition was satisfied there would be no binding contract and the broker would not yet be entitled to his commission. (*Williams* v. *Belling*, 76 Cal.App. 610 [245 P. 455].) There could scarcely be any stronger proof of performance of the condition precedent than the statement of the party to be charged that he or she was satisfied that everything was in order, and then initialing the contract right where the condition appeared. If it were not for the initials, and the evidence of Mrs. Ross' understanding of their placement near the condition, it could well be argued that there was actually no inspection of the books or property because so little time was involved and the inspections were so cursory in nature. However, if the parties are satisfied with less than would otherwise have been a reasonable inspection, that is their right, and it isn't for a court to make a contrary finding on the subject.

The crux of the case appears to be whether or not the condition was performed. There is no direct affirmative finding on this essential factual element of the case as there should have been. The affirmative finding of the court "[t]hat by execution of said written exchange agreement, defendant Maude E. Ross agreed to pay plaintiffs" would probably not be a sufficient finding on the vital issue of the performance or nonperformance of the condition. The evidence on the subject being quite conflicting, an appellate court could not, as it sometimes has power to do (Code Civ. Proc., § 956a), supply the missing finding of fact.

"The failure to find upon this issue [a material fact] requires a reversal of the judgment unless it can be said as a matter of law that if a finding had been made it would necessarily have been adverse to the defendant." (*Chacon* v. *Austin*, 110 Cal.App.2d 145, p. 147 [241 P.2d 1037].)

However, in support of the judgment, it can be determined

with reasonable certainty that the court made a finding on the material fact here discussed even though it be expressed in a negative sort of way. First, the court finds that appellant agreed to pay the $3,500 commission by the execution of the exchange agreement, which must necessarily mean the completed contract with all conditions performed, if a later finding is considered in connection therewith. This later finding is to the effect that "each and all of the denials and allegations set forth in defendant's Answer to plaintiffs' complaint herein, inconsistent with the Findings of Fact herein, are untrue." The answer, among other things, "denies that the condition in said alleged agreement, 'subject to inspection of books and properties by parties,' was ever met." The court, having found this denial to be untrue, by necessary implication, finds the opposite to be true and that is: the condition in said agreement has been met.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1958. Carter, J., did not participate therein.